**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**LAURA A. H.,**

**Plaintiff,**

**v.**

**Civil Action 2:25-cv-1251**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Laura A. H. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed her DIB application in March 2023, alleging that she became disabled beginning May 11, 2020. (R. at 177–83.) After Plaintiff's application was denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a hearing on October 10, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 32–55.) A

vocational expert ("VE") also appeared and testified. On November 5, 2024, the ALJ issued an unfavorable determination, which became final on August 7, 2025, when the Appeals Council declined review. (R. at 12–31, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ reversibly erred when evaluating medical opinion evidence. (Pl.'s Statement of Errors 8–12, ECF No. 14.) The undersigned concludes that this contention of error lacks merit.

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on November 5, 2024. (R. at 12–31.) The ALJ initially concluded that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2026. (*Id.* at 17.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

date of May 1, 2020. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: affective disorders (depression/bipolar disorder); anxiety disorder; post-traumatic stress disorder (PTSD); and migraine headaches. (*Id*. at 17.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 18.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand remember and carryout simple instructions; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; cannot interact with the public; can occasionally interact coworkers and supervisors and all communication is limited to the straightforward exchange of information without negotiation, persuasion, or conflict resolution; can deal with occasional changes in a routine work setting; avoid exposure to bright lights such as direct sunlight; limited to working in an environment with no more than a moderate noise level as defined in the (SCO); and avoid exposure to all hazards such as unprotected heights and machinery with moving mechanical parts.

(*Id*. at 19–20.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id*. at 24.) The ALJ then relied on the VE's testimony at step five to determine that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative jobs of cleaner, packer, and laundry worker. (*Id*. at 25.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 25–26.)

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c).

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error when evaluating medical opinion evidence. (Pl.'s Statement of Errors 8–12, ECF No. 14.) Specifically, she challenges the ALJ's evaluation of an opinion from her therapist, LISW Herzog. The undersigned is not persuaded.

### A. The Evaluation of Medical and Other Types of Evidence

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a

---

[3] Because Plaintiff's application was filed in 2023, it is subject to regulations governing applications filed after March 27, 2017.

medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

**B. LISW Herzog's Medical Opinion**

On October 1, 2024, LISW Herzog completed a medical source statement. (R. at 1827–29.) In that check-box form, LISW Herzog marked that Plaintiff had extreme social interaction limits. (*Id*. at 1827.) She marked that those social interaction limits would not change even if Plaintiff had only minimal contacts or interactions with others and wrote that this was because Plaintiff experienced severe anxiety with panic attacks in social situations that rendered her unable to work in structured environments. (*Id*.)

LISW Herzog also marked that Plaintiff had marked-to-extreme concentration and persistence limits and extreme adaptation limits. (*Id*. at 1828–29.) She marked that Plaintiff "was likely" to miss two or more partial or full workdays each month. (*Id*. at 1829.) She marked too that Plaintiff's condition "was likely" to deteriorate under workplace stress and wrote that this was "due to the nature of [Plaintiff's] mental illness," which made her "unable to maintain a consistent work schedule," and she listed Plaintiff's "sleep impairment, depression, low motivation, panic attacks, anxiety, intermittent suicidal ideation, and self harm (*sic*)." (*Id*.)

Finally, when asked to note any other work-related limitations, LISW Herzog wrote that Plaintiff "struggle[d] to maintain daily living activities." (*Id*.) She further wrote that "[o]n a routine basis, [Plaintiff was] unable to function in a scheduled/structured environment due to the unpredictability of her symptom of mental health." (*Id*.)

## C. The ALJ's Analysis

The ALJ discussed LISW Herzog's opinion throughout the determination and found her marked and extreme limits unpersuasive because they were inconsistent with other record evidence and inadequately supported by her own treatment records.

### 1. Consistency

The ALJ compared LISW Herzog's opinions to findings from state agency psychological reviewers and other record evidence, including, but not limited to, an April 2023 treatment note from another health care provider who documented Plaintiff's normal mental status examination findings. (*Id*. at 21–22.)

The ALJ wrote as follows:

> As noted above, both state agency mental health doctors opined that the record supports no marked or extreme mental health limitations (2A, 3A). They opined that the claimant has the residual functional capacity to perform work with reduced interactions with others and in an environment with infrequent changes (Id.). On the contrary, the claimant's counselor/therapist [LISW Herzog] indicates the claimant has extreme limitations in interacting with others, extreme limitation in the ability to adapt, and marked to extreme limitation in the area of concentrating/persisting (29F).
>
> While the undersigned does not find the state agency assessments to be overly persuasive (as they opined the claimant had only mild limitation in understanding/remembering and concentrating/persisting), the myriad marked and extreme limitations noted by the claimant's therapist [LISW Herzog] are wholly unpersuasive. For example, an April 2023 mental status test reveals the claimant had a good memory (recent, immediate, and remote), adequate attention/concentration, intact/articulate language, appropriate speech, and the claimant was alert and fully oriented (17F/25-28; see also Id. at 61-65).

(*Id*.)

The ALJ also considered and discussed treatment records from other providers that were inconsistent with LISW Herzog's opined limits. (*Id*. at 22–23.) That discussion included all the following accurate record-based observations.

Plaintiff's symptoms appeared to increase in April 2023, as evidenced by her brief enrollment in a partial hospitalization program ("PHP"). (*Id*. at 22 (citing R. at 825–29).) But that same month, Plaintiff reported feeling better and having milder symptoms after her medications were adjusted. (*Id*. at 22 (citing R. at 1159).) She did freelance work on a part-time basis, participated in group therapy, and denied having panic attacks in the past or present. (*Id*. at 22 (citing R. at 1159, 1169).) The ALJ explained that these April 2023 records "were consistent with a finding that [Plaintiff] has no more than moderate symptomology." (*Id*. at 22.)

In May 2023, Plaintiff reported that she felt better, benefited from the PHP, had mostly manageable anxiety, and was sleeping "pretty good." (*Id*. at 22 (citing R. at 1195).) Her mental status examination that month included many normal findings, including that she was fully alert (*i.e*., no indication of fatigue) and had adequate attention and concentration. (*Id*. (citing R. at 1212–16).) As part of this discussion, the ALJ explained that Plaintiff "had no indication of any marked or extreme limitations," which referenced LISW Herzog's opined limits. (*Id*. at 22.)

In June 2023, Plaintiff described her mood as "pretty stable" after another medication adjustment and she tolerated her medications well without side effects. (*Id*. at 23 (citing R. at 1267).) Her mental status examination findings were largely unremarkable. (*Id*. (citing R. at 1283–88).) Although she reported increased anxiety in July 2023, she also described her depression as mild, and her mental-status-examination findings that month and the next month were again largely unremarkable. (*Id*. (citing R. at 1303, 1320–24, 1356–60).) In October 2023, Plaintiff reported that her mood had declined but it was due to situational stressors. (*Id*. (citing R. at 1447).) In April 2024, Plaintiff was noted to have normal mood, affect, and judgment. (*Id*. citing R. at 1557).)

In short, the ALJ considered the consistency factor and found it lacking. The ALJ explained that LISW Herzog's opinions were inconsistent with findings from the state agency reviewers, who found that Plaintiff had no marked or extreme limits.[4] (*Id*. at 23.) Although the ALJ did not find those findings entirely persuasive, she concluded that they undermined LISW Herzog's substantially more restrictive opinion. The record substantially supports that explanation. (*Id*. at 61–62, 70–71.) Likewise, the ALJ explained that LISW Herzog's opinions were inconsistent with information from other providers' treatment records. As discussed above, the record substantially supports that explanation too.

**2. Supportability**

The ALJ also determined that LISW Herzog's own treatment records did not support her opinions. In particular, the ALJ compared one of LISW Herzog's July 2024 therapy notes to LISW Herzog's October 2024 opinions. The ALJ wrote as follows:

> Recent therapy notes from July 2024 indicate the claimant "presents reporting she has been doing fairly well" (24F/5). The claimant recently visits her mother and spent time with her sister and niece (Id.). The claimant reported that relationship with her boyfriend had been "going well" (Id.). The undersigned notes that this note is authored by the same therapist [LISW Herzog] who authored the opinion at Exhibit 29F indicating the claimant has marked and extreme limitations. To the contrary, this note indicates the claimant has normal attention/concentration, normal memory and cognition, normal speech, cooperative behavior, and a normal judgment (Id.). As alluded to above, the therapist's [LISW Herzog's] opinion at Exhibit 29F is wholly unpersuasive, as it contains no support from the source's own notes, and it lacks consistency with any other evidence or opinions of record. Therefore, in considering the factors of supportability and consistency, this opinion fails on both ends and is thus rendered unpersuasive.

(*Id*. at 23.)

---

[4] The ALJ found the reviewers' findings persuasive to the extent they found no marked and extreme limits, but she discounted them because some of their mild limits were not restrictive enough. (R. at 24.) Plaintiff does not challenge the ALJ evaluation of the reviewers' findings.

As this discussion demonstrates, the ALJ determined that LISW Herzog's July 2024 treatment note did not support the extreme and marked limits she opined. (*Id*. at 23.) The record substantially supports that explanation—LISW Herzog's July 2024 treatment note documented Plaintiff's normal attention and perception, speech, behavior, thought content, cognition and memory, and judgment. (*Id*. at 1626.)

Plaintiff nevertheless contends that the ALJ's supportability analysis was flawed. Plaintiff contends that the ALJ discounted the supportability of LISW Herzog's opinion because LISW Herzog failed to include information in the check-box form that supported her opinions. (Pl.'s Statement of Errors 9–10, ECF No. 14.) Plaintiff further contends that this was error because the form contained adequate explanatory support. (*Id*.)

The undersigned is not persuaded. First, LISW Herzog did not present any support for her opined concentration and persistence, adaptation, or absence limits. (R. at 1827–28.) Instead, she simply made marks on a form. A medical opinion set forth on a check-box form is "weak evidence at best." *See Hernandez v. Comm'r. of Soc. Sec*., 644 F. App'x 468, 475 (6th Cir. 2016) (citation omitted). District Courts in the Sixth Circuit routinely find that in the absence of explanatory support or reference to objective findings, such conclusory forms lack supportability. *See, e.g., Zachariah G. v. Comm'r of Soc. Sec*., No. 2:21-cv-1600, 2022 WL 883769, at *9 (S.D. Ohio March 25, 2022), *report and recommendation adopted*, 2022 WL 2339444 (S.D. Ohio June 29, 2022) ("[B]ecause the statement was in the form of a checklist, without any additional comments or annotation, it lacked any supporting explanations or citations to relevant medical evidence, which are central to the supportability factor."); *Laney v. Comm'r of Soc. Sec.*, No. 5:21-cv-01290, 2022 WL 2176539, at *6 (N.D. Ohio June 16, 2022) ("Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported

and a reason to discount a medical opinion.") (citing cases). Indeed, they are so lacking, they can be discounted even where an ALJ has not expressly stated that they are unpersuasive because they are check-boxes. *Laney*, 2022 WL 2176539, at *6 n. 2 (citing *Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv-02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan. 12, 2018)).

On the other hand, LISW Herzog presented some explanations to support her opined social interaction limits and her deterioration opinion.[5] For instance, she cited Plaintiff's panic attacks and anxiety, and she wrote elsewhere on the form that Plaintiff's mental-health symptoms were unpredictable. (R. at 1827.) But she did not present in the form any objective findings, such as mental-status-examination results, that supported her opinions. Because supportability depends on the degree to which a medical source presents supporting explanations and objective evidence, that absence of objective evidence is a reasonable basis to discount supportability. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

In any event, the undersigned is not convinced that the ALJ's supportability analysis depended solely on whether LISW Herzog presented adequate explanations or objective evidence on the form. The ALJ expressly compared LISW Herzog's opinions to her July 2024

[5] Moreover, to the extent LISW Herzog presented some explanation for her deterioration opinion, that opinion was speculative. LISW Herzog marked a box indicating that Plaintiff's condition "was likely" to deteriorate if she was exposed to ordinary workplace stress. (R. at 1829.) An ALJ need not translate an equivocal or non-definitive medical-source statement into an RFC restriction. *See Christina L. v. Comm'r of Soc. Sec.*, No. 2:24-CV-1156, 2024 WL 4833794, at *8–9 (S.D. Ohio Nov. 20, 2024) (holding that statements that the claimant's attention and concentration "may deteriorate" and that stress exposure "could" worsen symptoms were speculative—not concrete functional limitations requiring RFC inclusion); *Autumn D. N. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4087, 2022 WL 2734423, at *5 (S.D. Ohio July 14, 2022), *report and recommendation adopted*, 2022 WL 3026945 (S.D. Ohio Aug. 1, 2022) (holding that an ALJ need not include in the RFC a provider's non-specific, non-definitive statement that ordinary workplace stress "could lead to increased frequency" of panic attacks and depressive symptoms). *But see Shoop v. Comm'r of Soc. Sec. Admin.*, No. 3:17-CV-258, 2019 WL 2352929, at *6 (S.D. Ohio June 4, 2019) (rejecting proposition that a physician's opinion is speculative merely because it addresses what is likely to occur in the future).

treatment record. (*Id*. at 23 (citing *id*. at 1827–29, 1626).) The ALJ thus appears to have concluded that LISW Herzog's opinions were not supported by her treatment notes, which contained clinical findings that undermined her opinions.

Importantly, and contrary to Plaintiff's contentions, that July 2024 treatment note was representative of LISW Herzog's treatment records rather than a misleading outlier. LISW Herzog's treatment records sometimes documented that Plaintiff had a blunt or restricted affect or an anxious and depressed mood. (R. at 423, 425, 426, 433, 441, 447, 448, 464, 1082, 1086, 1087, 1486, 1626, 1667, 1679, 1685, 1691, 1698, 1704, 1710, 1716, 1722, 1728.) At other times, however, Plaintiff's mood and affect were noted to be normal. (*Id*. at 854, 1083, 1084, 1085, 1088, 1089, 1487, 1488, 1489, 1631, 1637, 1643, 1649, 1655, 1661, 1673.) Most importantly, LISW Herzog's treatment records repeatedly documented Plaintiff's normal attention and perception, speech, behavior, thought content, cognition and memory, and judgment. (*Id*. at 423, 425, 426, 433, 441, 447, 448, 464, 854, 1486, 1487, 1488, 1489, 1082, 1083, 1084, 1085, 1086, 1087, 1088, 1089, 1626, 1631, 1637, 1643, 1649, 1655, 1661, 1667, 1673, 1679, 1685, 1691, 1698, 1704, 1710, 1716, 1722, 1728.) Thus, substantial evidence supports the ALJ's determination that LISW Herzog's marked and extreme limits were not supported by her own clinical findings.

In short, the record substantially supports the ALJ's determination that LISW Herzog's opinions were insufficiently supported by her own findings and inconsistent with the broader record, including findings from state agency reviewers. Plaintiff's contention of error, therefore, lacks merit.

## V. RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE